18-0363, and it is Oliver, Inc. v. Fred Klentzle. Is that how you pronounce that? Klentzle. Klentzle. Okay, thank you. And for the appellant, we have Mr. Filbert. And for the appellee, Mr. Hanson. You may proceed, counsel. Walker Filbert Thank you very much, Your Honor. My name is Walker Filbert, and as you stated, I'm the attorney for the appellant, John Oliver, Inc. And, Your Honors, what we have are adjacent property owners on Quincy Bay, beautiful Quincy Bay in Quincy, Illinois. And this all started when Mr. Klentzle constructed an addition to his home. Part of the issue I'm going to get to today, the trial court had ruled on the summary judgment part, at least. Counsel, I'm so sorry to have to interrupt you. I'm out of water today. Things are a little awkward. Our third panelist is not here, and I want to explain that to you, and I keep forgetting to do it. So we're going to start your time over, but let me give my explanation. That's fine. Justice Klentzle is the third panel member. He's unable to be here today. He's going to listen to the oral arguments, because they are recorded, and we will conference with him and resolve these cases, but he won't be joining us today. And again, I would ask that you start counsel's time over. Thank you, and I'm sorry. Walker Filbert No, that's fine, Your Honor. Thank you. Again, Walker Filbert for the appellant. And in a nutshell, we have this property dispute over a building addition built by Mr. Kintzle. We have the nuisance complaint that my client filed, and also the trespass complaint. Those were both, for lack of a better term, snuffed out of the trial level by a summary judgment. That's two of the issues that we are appealing here today, and I'll just start with those issues, Your Honor. First of all, without going into detail, summary judgment, that's everything should be argued in favor of the non-movement, the pleadings, and everything that's on file. And based on that, Judge, on the nuisance claim, we feel that we do have an argument from a law standpoint. Appellee has put together a very good discussion, generally, of the law of nuisance in the state of Illinois, but we are relying upon the Carroll v. Hurst case and the specific language in there of the balancing act that the trial court needs to perform between the plaintiff and the defendant's use of their lands, and specifically the suitability of the use in that particular location. And that's what we're focusing on, on the nuisance complaint, Your Honor. We have a unique land here, Quincy Bay, that was all laid out in the pleadings on the use and enjoyment of the plaintiff, of that view of Quincy Bay. What's unique about it? What's unique about it is the wildlife, the water itself, the sunsets that occur across the bay. It's just like any other series of residences that are around the lake. Well, it's not, well, yes, at the lake, Your Honor, but it's not a typical residence like it would be in a residential neighborhood. The best way I can analyze it is... Does your client live there year-round? No, Your Honor. It is used, the corporation owns it, and the corporation... His client lives there year-round. Yours is part of it. I believe Mr. Kinsley does live there year-round, yes. My client uses it off and on over the course of the year. The best analogy I could come up with for purposes of argument today is if I bought a brownstone over the right field wall at Wrigley Field, because I like to look at Wrigley Field, I don't think it would give my neighbor the right to cross my property line and build some type of a structure that would partially obstruct my view of Wrigley Field, because that, in that particular location, is a unique view, and that's the argument I'm making for Quincy Bay. This is a unique area of Quincy. It's a unique bay. It's used for recreational purposes, and that's the main reason why my client purchased that, so that they could have pleasant views looking out over the bay, and particularly of the sunset, and... Does the structure currently occupy any of your land? I'm sorry. Does the structure currently occupy any of your land? Yes, and we performed a survey before filing suit that showed that, that the part of the structure that was built by Mr. Kinsley came onto, across the property line, onto my client's property. Mr. Kinsley also prepared a survey that discovered the same thing. Also... That's been alleviated, correct? That's been taken care of? No, actually, the reverse is true on that. Part of my client's garage was about one foot over onto Mr. Kinsley's property, and they filed a trespass claim on that, which we freely admitted, because it was, and I'll get to that in a second. But your client took care of it, though, right? In terms of removing... Absolutely. And Mr. Kinsley complained about that, but we did move it. And while I'm on that point, I'll just segue to that point real quick. That's one of the things that we're appealing, is because the trial court awarded Mr. Kinsley nominal damages of $2,000 on that trespass, and, Your Honors, we feel that that was an excessive award on the nominal damages. If the court were to look at, in the record, E15, the exhibit that was presented by the defendant, we're only talking about a very small sliver of property in an area where this is right by the bay, it's recreational use, there's nothing fancy about this area, and it's just a total windfall that a nominal damages of $2,000 be awarded on that, particularly when my client immediately took measures to correct the error that neither party knew about until they performed surveys. Now, counsel, in that situation, is it true that they dug up a concrete slab and moved the garage and then the crew didn't replace the concrete with anything, but just left basically dirt depression? That is true, Your Honor, but again, that's why I urge you to look at the exhibit photograph at E15. The rest of the area around there is unimproved, and you really can't tell that there's been any damage done by what my client performed. And of course, we're looking at an abuse of discretion standard on that, right? Yes, Your Honor. And while I'm on the topic of the surveys, that's another issue that we have asked the court to reconsider, or to review, rather, is we had argued that our survey costs be reimbursed if we were to prevail. Defendant argued against that. Mr. Kinsley's counsel argued against that, and even argued that it was improper to have that cost reimbursed in the event of prevailing. And the trial court, after a ruling that Mr. Kinsley prevailed, awarded $1,000 reimbursement for their survey costs, even though their counsel had argued against that for our case, and said that it was improper to do that. So, we just feel that that was an abuse of discretion. But you didn't take the position that it was improper. You were asking for the same. We were asking for the same, Your Honor. So, your basis for disagreeing with what the trial court did is that because opposing counsel said it wasn't proper, generally, I understand, you're not agreeing with what was awarded to them. Yes, Your Honor. It's a double-edged sword, but they argued against it, and then we just feel that that needs to be reversed and eliminated. As far as the nominal damages, we've asked that you reverse that and reduce it, and not necessarily remand those issues. But now, if I may go back to the summary judgment, at least on the nuisance claim, we feel that there is an avenue to the law where a plaintiff could have prevailed, Your Honor. And we also feel that there are material facts on the use of that property that needed to be aired out in a full hearing with some evidence. So, that's why we would ask that that finding of summary judgment on the nuisance claim be reversed and remanded for further consideration. Regarding the trespass claim, I think that's more clear on our position. We provided a survey by a licensed surveyor showing that the property that Mr. Kensley had built was on plaintiff's property. And that is a clear finding of fact that was presented in the pleadings, and we felt that that should have gone to a hearing instead of being finalized at the summary judgment stage. Now, I understand the trial court used the doctrine of latches as part of the reasoning on the summary judgment on the trespass claim because the argument had been made that the original encroachment occurred in the summer of 2013, which is true, but record is clear that the plaintiff and the defendant had reached an accommodation that if all he was going to do was build a porch without enclosing it and further blocking the view, that that was fine. And that was the understanding that the plaintiff had going forward. The actual cause of action here started in December of 2014 when without notice or any further information being afforded to the plaintiff that Mr. Kensley enclosed the porch and thereby blocking a substantial view that my client had. It was at that point that my client went out, obtained the survey to determine where the property line actually was. It was at that time, for the first time, that anybody discovered that there was an encroachment both ways. And within three months after the enclosure being filled in, in December of 2014, my client filed suit. So from that point where the actual problem occurred, we feel that latches did not apply. My client did not sit on his rights and did not do anything to prejudice the defendant in any way in bringing this action. So again, the trespass claim, we feel, should not have been disposed of at summary judgment and should have proceeded to a hearing. So we would be asking that that be reversed and remanded for further hearing as well, Your Honor. Which brings us to the adverse possession claim by Mr. Kensley. And how does that impact trespass? Well, that is an excellent question as always, Your Honor. I think that that should have been dovetailed with a further hearing on the trespass issue as well to get all the issues before the court. We feel that there is no clear proof that there was exclusive use of this property by Mr. Kensley. And where that impacts the trespass claim, Your Honor, is I believe the record is fairly clear. And in fact, from Mr. Kensley's there was a problem with the property line. Nobody really knew that the property line had been breached in either direction. And so to me, that's also dispositive potentially for exclusive use of the property or even knowing that you were adversely possessing a piece of property. If you didn't know where the property line was for the fact that what you were building had crossed that property line. So you are correct that the trespass and the adverse possession do dovetail factually. And we feel that both issues should have been tried together so that the trial court could get even more information to make their decision. If we affirm the trial court's decision to acquire title by adverse possession, doesn't that basically obliterate the trespass claim? I believe so, Your Honor. It's just our contention that the trespass issues should have been aired out in conjunction with the adverse possession issues. So thank you, Judge. So in summary, Your Honors, we feel the nuisance claim should not have been cut off at the summary judgment stage. The trespass claim should not have been cut off at the summary judgment stage. That those two actions be reversed and we feel that the, I've explained the latches argument in relation to the summary judgment. The adverse possession claim, we feel that exclusive use was not met because alternate evidence was presented on that claim. And in any event, as the court has indicated, that issue dovetails with the trespass and should have been heard together. And then for the reasons already stated, the nominal damages should be reduced and we feel that the reimbursement for the survey should not have been awarded. And we would ask that you reverse and adjust those items as well. So if you have no further questions, Your Honor, thank you very much. All right. Thank you, Counsel. You'll have additional time on rebuttal if you desire. Thank you. Mr. Hanson. Thank you, Your Honor. Your Honor, Counsel, I'm here today on behalf of Fred Kinsley and we are asking that the court uphold the rulings of the trial And in this case, there has been no proof or nothing shown by John Oliver that Mr. Kinsley intentionally trespassed onto the plaintiff's property. The survey, which they allege and did in this case, took place in 2015. As you heard and as the record shows, my client started in 1991 when he built cinder blocks, the cinder pad, and the wall, if you will, that led from his house down to the river. And the record shows he took title in 1988 from his mother and he built that in 1991. Mr. Mills didn't even occupy his property until 2003. The survey, which he was talking about, which showed encroachment and showed encroachment starting with those cinder blocks that led onto his land. Those were put in by Mr. Kinsley, as I said, in 1991. At the time, there was nothing that showed that wasn't his property. He did not have the knowledge or intent to commit a trespass. So we believe the court properly upheld the summary judgment as to trespass because there was no intent on behalf of Mr. Kinsley to do that act, which then goes into the latches defense, if you will. I'll just stick on that right now. Because the court said in its... You know what? Can I stop you there? Sure. I want to make sure I'm clear on something. I understand about when your client initially started putting up the cinder block and all, when all of that happened. Right. We know that opposing counsel, they had a survey that showed that it encroached and you just said encroachment was where he, your client, started back in 93, I think you said, putting the cinder block and all of that on. Then there was evidence in the record that your client also had a survey done. Yes. He requested a formal survey that showed no encroachment. At least that's what I think the brief says. But then didn't the surveyor just eyeball the property line and then say it did not appear to encroach? That's my first question. Then my second question is, the beginning of the encroachment is what your client did in 1993. Is that what you're saying? Well, I think it's twofold. First, let me ask you a question on the survey. My client did originally have verbal discussions with a surveyor. But once we got deeper into this lawsuit, we then did hire and paid for and in the record is a formal survey from Four Points Land Survey, which was done in this case. It did show the encroachment of my client's, starting with that cinder block area, onto the plaintiff's land. But then that the deck and the addition that he built above his property, which if you take a look in the record, the two pictures are on C-134 and C-135. These two pictures, C-134 is a view from Mr. Mills' property across and then this is a more C-135. So that addition, the addition, in addition to the cinder blocks, is a little over onto the disputed property. So I think to answer your second question, both of those things fell into both of the parties' surveys and were at issue in this case. So there's an agreement that there is an encroachment then? Yes. Yes, absolutely. And then the adverse possession, does it cover the totality of the encroachment? Yes. And that is what the trial court heard and weighed the evidence and made the ruling on the quiet title for the adverse possession. Well, that's why I have the question because the trial court said something along the lines that, you know, your client showed that it wasn't on his property. And that kind of threw things off for me a little bit. Let me find that here. No, I think, as I have my notes here, the total amount of the encroachment, depending on the surveys, is 1.4 feet to possibly 5.7 feet, depending on the two surveys. So, going back to the summary. I'm sorry, let me say this. Sure. It looks like the trial court said, upon learning of the plaintiff's dispute regarding both his own construction and their respective property lines, the defendant requested a survey which found no encroachment of any structure on his property onto that of the plaintiff. Those are the words of the trial court. And that's inaccurate, right? That is the testimony that Mr. Kinsley did have by way of an affidavit which took place prior to then the survey being found later. That is correct. So, that's in the trial court's ruling is what I'm saying. I'm not sure why. Is that in the summary judgment ruling? Yes. I have the, I'm sorry, I don't have that. Yes, that's in the summary judgment. But then going to the nuisance part of that summary judgment. The case law, as I've cited, my brief is clear. You know, there's no private right for a view across someone else's land. I've cited many cases. Illinois talks about you can build a 50-foot wall up and that was upheld as okay. There's nothing unique or special about this view under the Carrollton Hurst case, which counsel has cited. Mr. Mills' own testimony was he objected because it obstructed a view of the water and wildlife. We think the court used the proper balancing act. We think the court followed the law appropriately and there was no cause for a nuisance in this case. Now, once we got past the nuisance and the trespass, the plaintiff did have a quiet title action. We had then a quiet title action back in our counterclaim and the trespass. I'll skip quickly past the adverse position because I want to hit the damages and the trespass first. Mr. Mills admitted to trespassing on my client's property. He admitted to going over there without my client's knowledge, taking this backhoe, digging things up and moving it. Yes, he did that. The fact is, as the court said in its order after trial and the testimony showed, he left it in that manner. The court made a decision for $2,000. The case law that we've cited, the Chicago Trust case, specifically says you don't have to prove any damage. You can get a reward of nominal and the court did that. My client's testimony was, and it was unrefuted, that area is still dug up. There was nothing done to it. It's a depression, it's dirt, it was banged up concrete, and it got moved away. So we believe that the court's decision to award $2,000 should be upheld. It was not an abuse of discretion. The court heard the testimony, heard what was left, and heard that my client said he's either going to have to put dirt down and sod it, he's going to have to do something, but he can't just leave it as it is.  I did not, and the record, I went back and looked at it on page 156. I did not state that counsel could not seek a survey cost. What I said was there was no basis whatsoever for the award of attorney's fees. That's what he was arguing for. I said I don't think the award of a survey is specifically allowed by statute, but parties can claim it as damages, which in this case, in quieting title for Mr. Kinsley, we ask for the $1,000 that he paid for the survey to be awarded. I don't think there's the right for attorney's fees, and that's what I stated. I think there is the right to seek the survey. That's what I asked for. We were awarded the $1,000 that we paid for our survey, just as Mr. Milburn asked for his client to be paid for his survey. So we would say that the damages should be upheld. As to the adverse possession, I've read their brief, and if you look at the elements of adverse possession, their brief is contesting only one element from the trial, and that was exclusive use. Justice, you were on the case, and I'm going to cite the Brand Horse case, which came right out of Quincy from 2014, which dealt with something very similar. It was a seven-and-a-half-foot strip of hedge and Ridgewood Drive. That case lays out everything that I would say this case has, almost to a T. And exclusivity is not that you have to have knowledge and exclude everybody else from using the property. What it means is you have to, as the Brand Horse case stated, does it advise the world and other property is appropriated and being occupied. And examples from the Brand Horse case were yard maintenance, mowing, weeding, raking. And my client testified in 1991, after he took this property and built that cinder block, and you see his gravel driveway. And I would ask the court, if you looked at the pictures in the record, C-200 is probably the best picture, which shows kind of the area in question, with the cinder blocks, the pad, which goes. These are the additional two-by-fours that lead to the decking, and there's the wood in his tractor. The testimony, which was cited in opposing counsel's brief, said three things, which why they believe that refutes my client's exclusive use. One, Mr. Mills at times knocked some weeds down. He usually kept it clean around the area. And in his testimony in the record, he said he went over to my client's concrete pad and had a few beers with him on occasion. But when he was asked, he never stored anything under there. He never kept anything there. He never maintained it. It was my client's wood, his tractor, his vehicles, his boat. My client, under the case law, demonstrated exclusive use and held it out that it was occupied. He is the one who maintained it. He is the one who installed it. He is the one who kept it since 1991, which was 12 years before Mr. Mills even moved in, and then after Mr. Mills moved in for the remaining 10 years up until 2013, when Mr. Mills saw my client then build his deck and continued to do what he did. So we believe the court properly ruled, after weighing all the evidence, that my client met his burden under adverse possession and the exclusive use contention which the plaintiff is making in this case. Last, I'd just like to address the latches issue quickly. In 2013, my client built that addition up. Mr. Mills, in the record shows, saw that. He knew that. And at no point in time from 2013 to 2015 did he ever complain to my client, and I would state, you can review the record up and down as I have, there is no evidence whatsoever, as Mr. Filbert just said, that there was an accommodation between the parties. There was no discussion whatsoever from Mr. Mills and Mr. Kinsley when Mr. Mills said, look, I'm okay with that as long as you don't build something up there and block my view. My client, in December of 2014, went specifically, as was testified to, to Mr. Mills and said, look, I'm building onto this addition, and it's going to be used to keep his elderly in-laws there. He told him what he was going to be doing. Mr. Mills' testimony was he then went out of town, and three days later he came back and Mr. Kinsley did exactly what Mr. Kinsley told him he was going to do. He saw it. He then waited. This was in December of 2014. My client continues to build, and in March of 2015 is when Mr. Mills files his lawsuit after getting the survey. At no point in time would the record reflect that Mr. Mills would go over and tell him to stop, send him a letter, seek a TRO, seek an injunction, anything to stop my client from doing that. When my client got served, that's when he stopped, and you see the tie-back in the pictures, and that's the current condition that's in as we sit here today. So certainly I would argue that Mr. Mills sat on his rights. He did not bring that forward, and my client has been harmed, and therefore the court was appropriate in granting summary judgment. So in conclusion, we would ask that the court uphold the rulings from the trial court as to the summary judgment, as to the quieting title on the adverse position claim for Fred Kinsley, and the award of the total of $3,000 in damages. Thank you. Thank you, counsel. Any rebuttal, Mr. Filbert? Thank you, Your Honor. Just very briefly, and it goes back to the latches argument. I believe in the record there is a claim by Mr. Kinsley that he put my client on notice that he was going to be enclosing the porch on his property. I believe that my client contested that claim, saying that if anything had been said, it was only said outside while the parties were on their respective driveways, and that the actual intent wasn't as clear as it has been portrayed today. There was certainly no written notice, no letter dropped off at the house, any further indication that there was going to be an enclosure of that property, until my client came back and discovered that it had been put up. So the latches argument, I believe the true start of the problem was in December of 2014. And then back to the adverse possession point, I believe we have shown that there was not exclusivity, and it has to be 100% exclusivity over 20 years on a continuous basis. And the evidence of the record shows that there wasn't that exclusivity. And there's also an indication, I believe, it was not brought up at trial, but I believe it was brought up in the depositions, that the Army Corps of Engineers also controlled some of the waterfront down in that part of the bay. And I just don't feel that the defendant was able to adequately prove that component of the adverse possession. But other than that, I'll stand on our other arguments that we've made, Your Honor, and if you have no further questions, I thank the Court. All right, thank you, counsel. We'll take this matter under advisement and be in recess at this time.